PANG ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* MINCH ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Pang *v.* Minch (1990), 53 Ohio St. 3d 186.]

(No. 89-442—Submitted March 13, 1990 — Decided August 29, 1990.)

*Miller & Tolaro Co., L.P.A.,* *Alfred J. Tolaro* and *James L. Deese,* for appellees and cross-appellants.

*William J. Coyne,* for appellant and cross-appellee, Jack Hamilton.

*McNeal, Schick, Archibald & Biro* and *Fredric E. Kramer,* for appellant and cross-appellee, Jerry Lehecka.

*Davis & Young Co., L.P.A., Jan L. Roller* and *Martin J. Murphy,* for appellant and cross-appellee, Lynne M. Minch.

*Frank A. Ray Co., L.P.A.,* and *Frank A. Ray,* urging affirmance for *amicus curiae,* Ohio Academy of Trial Lawyers.[2]

SWEENEY, J.

### I

We will first consider the contention of appellant Minch concerning the trial court's denial of her motion *in limine* seeking to foreclose consideration of the testimony of Dr. Kaufman by the jury. The basis for the motion was the alleged noncompliance by appellees with former Loc. R. 21 of the Cuyahoga County Common Pleas

---

[2] The motion of *amicus curiae,* Ohio Academy of Trial Lawyers, for leave to file a brief instanter is hereby granted.

Court. Promulgation of the rule is authorized by Civ. R. 16, which provides in relevant part:

"A court may adopt rules concerning pretrial procedure to accomplish the following objectives:

"* * *

"(6) The exchange of medical reports and hospital records[.]"

Former Loc. R. 21 provided in relevant part:

"For the purpose of insuring the readiness of cases for pretrial and trial the following shall be in effect.

"A pretrial conference shall be conducted in all civil cases prior to being scheduled for trial, except in actions for injunctions, foreclosures, marshalling of liens, partition, receiverships, and on appeal from administrative agencies. *In addition, the judge assigned the case may, for good cause shown at a hearing prior to trial, waive pretrial requirements stated herein and make such orders he deems just relative to discovery or pretrial proceedings.*" (Emphasis added.)

With respect to pretrial statements, Loc. R. 21, Part I, provided as follows:

"(A) At least one week prior to the scheduled pretrial hearing, counsel for both sides shall completely execute and file a separate Pretrial Statement in the Central Scheduling Office on behalf of their respective clients and serve a copy of it on all opposing counsel. * * *

"(B) The Pretrial Statements will recite a brief description of the case and the injuries involved, will list item by item, the ascertainable damages such as medical expenses, lost earnings, property damage, etc., will indicate the status of depositions and physical examinations, and reflect the lowest demand and highest offer. *Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of medical and expert witnesses*

*expected to be called by each party, each counsel shall exchange with all other counsel the written reports of medical and expert witnesses he expects to testify and the Pretrial Statements shall indicate compliance with this provision. Should a party intend to call an expert witness and has not procured a written report from said witness, he shall so indicate such fact in his pretrial statement stating the name and address of the expert and the subject of his expertise together with the reason for his non-receipt of such report.*

"(C) *Expert witnesses whose reports have not been furnished to opposing counsel prior to a pretrial held within sixty (60) days before trial, will not be permitted to testify at the trial, except where a party has not received a written report from such expert witness but has fully complied with Item (B) hereof.*" (Emphasis added.)

In the case at bar, Dr. Kaufman did not prepare a medical report regarding the injuries to Gordon Pang. Accordingly, pursuant to former Loc. R. 21, Part I(C), actual production of a report was not required. Nevertheless, it is urged by appellant Minch that appellees failed to comply with the requirement of Loc. R. 21, Part I(B), that they include within their pretrial statement the name and address of the expert, the subject of his expertise and the reason for non-receipt of the report.

As early as the November 13, 1986 deposition of Gordon Pang, counsel for at least one of the appellants was aware that Pang had been treated by Kaufman. This information, along with the address of Kaufman, had also been provided in response to interrogatories propounded to Gordon Pang by appellant Hamilton. Moreover, on August 18, 1987, counsel for appellees sent a detailed correspondence to counsel for the appellants summarizing

the injuries suffered by Gordon Pang and identifying the physicians who treated him, including Kaufman.

Considering the absence of a physician's report and appellees' efforts to apprise appellants of Kaufman's identity and address, the trial court concluded that appellants were placed on notice that appellees intended to rely upon his testimony. The court therefore concluded that appellants were not prejudiced by the lack of a physician's report. We agree.

The clear import of former Loc. R. 21 was to vest in the trial court the discretion to determine whether a party has complied with the rule and the appropriate sanctions for its transgression. Such determinations will not be reversed on appeal absent an abuse of discretion. See *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44, 15 OBR 142, 472 N.E. 2d 704. Appellant Minch contends, however, that exclusion of the testimony is mandatory where a report is not produced and supplied. This argument is without merit for two reasons. As an initial matter, if a report was required in all cases there would be no need to provide for alternative compliance pursuant to Loc. R. 21, Part I(B). Second, mandatory exclusion of expert testimony would be inconsistent with the authority conferred upon the trial judge to "waive pretrial requirements * * * and make such orders he deems just relative to discovery or pretrial proceedings." We therefore hold that former Loc. R. 21 of the Cuyahoga County Common Pleas Court vested in the trial court the authority to determine whether compliance therewith had been accomplished, and such determination will not be reversed on appeal absent an abuse of discretion.

## II

Appellants Minch and Lehecka maintain further that the trial court erred in permitting counsel for appellees to comment in closing argument that appellants had failed to present evidence contradicting the testimony of appellees' expert witness regarding appellee's physical injuries. It is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury. *State* v. *Champion* (1924), 109 Ohio St. 281, 289, 142 N.E. 141, 143. See, also, *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 26, 35 O.O. 2d 8, 14, 215 N.E. 2d 568, 578. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 5 OBR 380, 450 N.E. 2d 265, paragraph one of the syllabus; *State* v. *Champion, supra*. The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. *Ohio & Western Pennsylvania Dock Co.* v. *Trapnell* (1913), 88 Ohio St. 516, 521, 103 N.E. 761, 763; *Legg* v. *Drake* (1853), 1 Ohio St. 286, 288. Such determination will not be reversed on appeal absent an abuse of discretion. See *Braeuning* v. *Russell* (1960), 170 Ohio St. 444, 446, 11 O.O. 2d 200, 201, 166 N.E. 2d 240, 242.

In the case at bar, counsel for appellees contended in closing argument that appellees' evidence regarding the existence and severity of Gordon Pang's injuries was unrebutted by appellants. These remarks were neither inappropriate nor prejudicial. Accordingly, the trial court did not abuse its discretion by overruling the objection thereto.

## III

It is also the contention of appellants Minch and Hamilton that the remarks of counsel for appellees which suggested that appellants were relying

upon prejudice against appellees on the part of the jury were not supported by the record and therefore inappropriate. While we agree with the aforementioned contention of appellants, we are unable to concur in their further assertion that it affected the jury verdict in any respect. It must be observed at the outset that the objection by appellants to counsel's remarks was sustained by the trial court. Moreover, the jury was instructed that the opening and closing statements of counsel are not evidence and should not be considered as such. The jury was further instructed that no evidentiary value was to be ascribed to matters which were withdrawn from the jury's consideration by the trial court.

A presumption always exists that the jury has followed the instructions given to it by the trial court. *State* v. *Fox* (1938), 133 Ohio St. 154, 160, 10 O.O. 218, 221, 12 N.E. 2d 413, 416; *Browning* v. *State* (1929), 120 Ohio St. 62, 72, 165 N.E. 566, 569. Accordingly, it must be presumed that the jury properly disregarded the closing remarks of counsel for appellees as they related to matters not in evidence.[3]

### IV

While overruling all of the assignments of error advanced by appellant Minch, the court of appeals sustained the first assignment of error set forth by appellees in their cross-appeal. In so doing, the appellate court adopted 2 Restatement of the Law 2d, Torts (1965), Section 433B(2). Appellants contend that the decision of the court of appeals is inconsistent with our prior holding in *Ryan* v.

*Mackolin* (1968), 14 Ohio St. 2d 213, 43 O.O. 2d 326, 237 N.E. 2d 377. In *Ryan, supra,* the plaintiff suffered injuries as a result of two automobile accidents separated by a period of approximately five months. The plaintiff sought both permissive joinder of both defendants (the operators of the other motor vehicles in the two accidents) and the imposition of joint and several liability on each for injuries plaintiff sustained to his back. While this court concluded that joinder of the tortfeasors as parties defendant was appropriate, it was further determined that only several, not joint, judgments could be obtained by plaintiff.

In reaching the aforementioned conclusion, the court in *Ryan* quoted with approval 22 American Jurisprudence 2d, Damages, Section 14, which then provided as follows:

" 'Generally speaking, and apart from the situation where a defendant is held responsible on the doctrine of respondeat superior or the like, a defendant is liable only to the extent to which his own acts have caused the injury complained of, and it follows that *separate wrongs done by independent agents cannot be joined together to increase the responsibility of one of the wrongdoers,* notwithstanding any difficulty there may be in determining what part of the injury or loss was the result of the acts or omissions of the defendant, and what part was the result of other causes. It has been said that tort-feasors generally will not be held jointly and severally liable where their independent, concurring acts have caused distinct and separate injuries to the plaintiff, *or where some reasonable means of apportioning the*

---

[3] A similar disposition must be made of appellants' objection to appellees' argument to the jury suggesting that each defendant bear a one-third share of the damages. Inasmuch as the objection to the argument was sustained, it must be presumed that the jury disregarded the comments.

*damages is evident.'* " (Emphasis *sic.*) *Ryan, supra,* at 218-219, 43 O.O. 2d at 329, 237 N.E. 2d at 381.

In this respect the holding in *Ryan* mirrors the language of 2 Restatement of the Law 2d, Torts (1965), Section 433A, which provides as follows:

"(1) Damages for harm are to be apportioned among two or more causes where

"(a) there are distinct harms, or

"(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

"(2) Damages for any other harm cannot be apportioned among two or more causes."

The appellate court below concluded that *Ryan* was distinguishable from the case at bar inasmuch as the former decision involved an appeal of a trial court dismissal of the action for misjoinder of parties. Accordingly, the court of appeals interpreted *Ryan* as merely remanding the case for trial in accordance with the principles embodied in Section 433A.

While the appellate court's reading of *Ryan* is an entirely plausible interpretation of its procedural context, other language in the opinion is at variance with such a narrow construction of its effect. In concluding that only several judgments may be obtained in any subsequent trial of the underlying action, the *Ryan* court observed as follows:

"Although we are obliged to indulge in every inference favorable to the pleader, we cannot ignore the allegation in the petition herein that following the first collision Ryan was hospitalized and received medical treatment for an injury to his back. The nature and extent of the disabling effect of that collision having been subject to medical scrutiny, we cannot assume that however indivisible in *effect* plaintiff's back injury became after the second collision, it will be incapable of separation as to *cause*. The sequence of events here is not such that, however difficult, it should be insurmountable to chart the course of cause to effect as a subsequent event adds its force to the flow. See *Milks* v. *McIver,* 264 N.Y. 267, 190 N.E. 487.

"We, therefore, must concur with appellants that 'each defendant should only be responsible or liable pro-rata for that part of the damages attributable to his particular factor of causation.' Accordingly, several judgments only are warranted against these independent tort-feasors, whose torts are not concurrent, and against each only to the extent and in the proportion that his default proximately contributed to the plaintiff's entire injury, the burden of proof of which should remain upon the latter." (Emphasis *sic.*) *Id.* at 222, 43 O.O. 2d at 330-331, 237 N.E. 2d at 381.

This aspect of *Ryan,* therefore, would appear to be inconsistent with Sections 433A and 433B of the Restatement. While the language of the opinion would allow for joint and several liability where *no* reasonable méans of apportionment of the damages is evident (compare Section 433A[2]), the *Ryan* court nevertheless held *as a matter of law* that apportionment in that case was possible. This analysis is flawed in several respects. As an initial matter it was based on the belief that joint and several liability will result only where there is indivisibility of causation. However, an official comment to Section 433A provides as follows:

"* * * Where two or more causes combine to produce such *a single result, incapable of division on any logical or reasonable basis,* and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for

its own sake, and each of the causes is charged with responsibility for the entire harm. The typical case is that of two negligently driven vehicles which collide and kill a bystander. The two drivers have not acted in concert, and the duties which they owe are separate and distinct, and may not be identical in character or scope; but the entire liability of each rests upon the obvious fact that each has caused the single result, and that no rational basis for division can be found." (Emphasis added.) 2 Restatement of the Law 2d, Torts (1965) 440, Section 433A, Comment *i*.

Thus, the criterion for application of both 433A(2) and 433B is the indivisibility of harm, not the indivisibility of causation. Second, the court in *Ryan* not only placed an erroneous burden of proof upon the plaintiff therein but further concluded that *as a matter of law* such burden could not be met.[4] Finally, the decision of the *Ryan* court is inconsistent with Section 433B(1) of the Restatement. This subsection provides as follows:

"(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff."

The comment to Section 433B(1) states as follows:

"Subsection (1) states the general rule as to the burden of proof on the issue of causation. As on other issues in civil cases, *the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm."* (Emphasis added.) 2 Restatement of the Law 2d, Torts (1965) 442, Section 433B(1), Comment *a*.

Thus, where a plaintiff suffers a single injury as a result of the tortious acts of multiple defendants, the burden of proof is upon the plaintiff to demonstrate that the conduct of each defendant was a substantial factor in producing the harm. See *Porterie* v. *Peters* (1975), 111 Ariz. 452, 455-456, 532 P. 2d 514, 517-518; *Richardson* v. *Volkswagenwerk, A.G.* (W.D. Mo. 1982), 552 F. Supp. 73, 82-83. Once this burden has been met, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. Thereafter, the burden of persuasion shifts to the defendants to demonstrate that the harm produced by their separate tortious acts is capable of apportionment. In this regard, Section 433B(2) of the Restatement provides as follows:

"Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment

---

[4] It is undoubtedly true that the determination of whether the harm sustained by the plaintiff is capable of apportionment constitutes a judicial function. 2 Restatement of the Law 2d, Torts (1965), Section 434(1)(b); *Mathews* v. *Mills* (1970), 288 Minn. 16, 23, 178 N.W. 2d 841, 845;

*Richardson* v. *Volkswagenwerk, A.G.* (W.D. Mo. 1982), 552 F. Supp. 73, 83. However, given the respective burdens of persuasion borne by the parties, it would be error to conclude, prior to trial, that such apportionment was possible. See the discussion *infra*.

among them, the burden of proof as to the apportionment is upon each such actor."

Appellant Minch argues that Section 433B(2) is wholly consistent with *Ryan, supra,* and is applicable only where there exists both an indivisibility of harm and an indivisibility of causation. It is therefore her contention that Section 433B(2) applies merely to situations involving concurrent rather than successive tortfeasors. However, the position of appellant is contradicted by the plain language of Section 433B(2) and the official comment thereto. Comment *d* to Section 433B(2) observes as follows:

"The reason for the exceptional rule placing the burden of proof as to apportionment upon the defendant or defendants is the injustice of allowing a proved wrongdoer who has in fact caused harm to the plaintiff to escape liability merely because *the harm which he has inflicted has combined with similar harm inflicted by other wrongdoers, and the nature of the harm itself has made it necessary that evidence be produced before it can be apportioned.* In such a case the defendant may justly be required to assume the burden of producing that evidence, or if he is not able to do so, of bearing the full responsibility. As between the proved tortfeasor who has clearly caused some harm, and the entirely innocent plaintiff, any hardship due to lack of evidence as to the extent of the harm caused should fall upon the former." (Emphasis added.)

Thus, while the *Ryan* court would appear to limit its scope to concurrent tortfeasors, *Ryan, supra,* at 219, 43 O.O. 2d at 329, 237 N.E. 2d at 382, the language of Section 433B(2) and the comment thereto compel no such result. The focus of both the subsection and the comment is upon the indivisibility of harm, not the indivisibility of causation.[5] Accord *Hawkes* v. *Goll* (1939), 256 App. Div. 940, 9 N.Y. Supp. 2d 924, affirmed (1939), 281 N.Y. 808, 24 N.E. 2d 484.

Appellants contend that, inasmuch as each of the successive impacts sustained by appellee was subject to medical scrutiny, he bears the burden of apportionment. However, the language of Sections 433A and 433B and the comments thereto place upon the plaintiff the burden to demonstrate that he has suffered an injury and that the tortious act of each defendant was a substantial cause in producing that injury. Once this burden has been met, it is the responsibility of the defendants to apportion the harm if joint and several liability is to be avoided. In this context, evidence of medical scrutiny following each tortious act is relevant only insofar as it assists the defendants in fulfilling this responsibility.

We therefore hold that 2 Restatement of the Law 2d, Torts (1965), Section 433B(2) is applicable where a single, indivisible injury is proximately caused by the successive tortious acts of multiple defendants. See *Ravo* v. *Rogatnick* (1987), 70 N.Y. 2d 305, 520 N.Y. Supp. 2d 533, 514 N.E. 2d 1104.

In the case at bar, it was clearly established that each of the appellants was negligent and that each negligent act was a substantial factor in producing the permanent injuries to appellee's back. Evidence was also presented to the jury from which it

---

[5] Indeed, in Illustration 7 to Section 433, Comment *d,* any reference to the simultaneous or concurrent nature of the tortious acts described therein is conspicuously absent.

could conclude that appellee suffered indivisible harm as a result of all three accidents. Accordingly, the evidence adduced by appellees was sufficient to obtain joint and several judgments against all three appellants. The burden to apportion the harm was thereafter the responsibility of appellants.

## V

The jury, having been instructed by the trial court in accordance with the holding of *Ryan,* returned several judgments against the appellants. The appellate court, while overruling all assignments of error propounded by appellant Minch, sustained two of the four assignments of error urged by appellees on cross-appeal. The determination was made despite the request by appellees that their assignments of error be entertained *only* in the event that any of the assignments of error advanced by appellant were sustained and a new trial ordered.[6] Appellees and appellants Lehecka and Hamilton were satisfied with the jury verdict and none of these parties desired a retrial of the case. Apparently, the appellate court felt compelled to address the assignments of error urged by ap-

pellees on cross-appeal. This determination may have been motivated by the requirements of App. R. 12(A), which provides as follows:

"In every appeal from a trial court of record to a court of appeals, not dismissed, the court of appeals shall review and affirm, modify, or reverse the judgment or final order of the trial court from which the appeal is taken. *The appeal shall be determined on its merits on the assignments of error set forth in the briefs required by Rule 16,* on the record on appeal as provided by Rule 9, and, unless waived, on the oral arguments of the parties, or their counsel, as provided by Rule 21. Errors not specifically pointed out in the record and separately argued by brief may be disregarded. *All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error.*" (Emphasis added.)

However, App. R. 12(B) provides in relevant part:

"When the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in appellant's brief and that the appellee is entitled to have the judgment

---

[6] It is certainly understandable that appellees would wish to preserve the errors assigned by them and have the liability rules announced herein apply on retrial in the event that the appellate court sustained the assignments of error urged by appellant Minch. The better method for attaining this goal would be employment of the procedure authorized by R.C. 2505.22. This section provides as follows:

"In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, *which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in*

*part.* The time within which assignments of error by an appellee may be filed shall be fixed by rule of court." (Emphasis added.)

Utilization of R.C. 2505.22 would have allowed the appellate court to consider appellees' assignments of error only if the judgment was reversed, see *Parton* v. *Weilnau* (1959), 169 Ohio St. 145, 8 O.O. 2d 134, 158 N.E. 2d 719, paragraph seven of the syllabus, and would have had the salutary effect of clarifying the applicable law on remand had reversal and retrial been necessary. See *Duracote Corp.* v. *Goodyear Tire & Rubber Co.* (1983), 2 Ohio St. 3d 160, 165, 2 OBR 704, 708, 443 N.E. 2d 184, 188 (C. Brown, J., dissenting).

or final order of the trial court affirmed as a matter of law, the court of appeals shall enter judgment accordingly. * * *"

Thus, where the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the brief thereof, App. R. 12(B) requires the appellate court to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee.[7] The judgment or final order of the trial court should, under such circumstances, be affirmed as a matter of law by the court of appeals.

It was therefore error for the court of appeals to reverse the judgment below and order a new trial based upon the cross-appeal of appellee. Consequently, the judgment of the court of appeals is affirmed in part and reversed in part. The judgment of the trial court is hereby reinstated.

*Judgment accordingly.*

MOYER, C.J. STEPHENSON, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

HOLMES, J., concurs in judgment.

EARL E. STEPHENSON, J., of the Fourth Appellate District, sitting for WRIGHT, J.

DOUGLAS, J., concurring in part and dissenting in part.

I

I concur in paragraph one of the syllabus as it is a correct statement of the law. I do not agree, however, with the majority's discussion supporting the proposition. Former Loc. R. 21 makes a distinction, internally, between "medical witnesses" and "expert witnesses." Part I(C) of the rule makes reference to "expert witnesses." Dr. Kaufman's report does not, in my judgment, fit into the Part I(C) exception.

I also concur in paragraphs two, three, four, six and eight of the syllabus and with the ultimate judgment of the majority. However, with regard to the majority's discussion supporting paragraph eight of the syllabus, I make reference to R.C. 2309.59 which is also dispositive of the issue. R.C. 2309.59 provides in relevant part:

"In every stage of an action, the court shall disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No final judgment or decree shall be reversed or affected by reason of such error or defect. * * *"

In the case at bar, the Pangs were satisfied with the judgment of the trial court and, hence, the errors assigned by them on cross-appeal admittedly did not affect their substantial rights, given the disposition of Minch's assigned errors. In ruling on the Pangs' cross-appeal, the court of appeals did find error in the proceedings of the trial court. However, R.C. 2309.59 required the court of appeals to disregard any errors found.

---

[7] This aspect of App. R. 12(B) is, of course, applicable only when, as here, the appellee is satisfied with the judgment below. Where an appellee is dissatisfied with the judgment below, albeit for reasons different from those propounded by appellant, the appellate court must consider the assignment of errors urged on cross-appeal pursuant to App. R. 12(A).

## II

More important, I write separately because I believe that paragraphs five and seven of the syllabus are somewhat confusing, given the statement contained in paragraph six of the syllabus.

In paragraph six of the syllabus, we adopt 2 Restatement of the Law 2d, Torts (1965), Section 433B(2), which provides as follows:

"Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor."

This is a clear statement of what I perceive the law to be — and should be. However, paragraph seven of the syllabus states that Section 433B(2) "* * * is applicable where a single, indivisible injury is proximately caused by the successive tortious acts of multiple defendants." (Emphasis added.)

Thus, paragraph seven of the syllabus seems to imply that a plaintiff must prove the indivisibility of harm before the burden of persuasion shifts to the defendants to show that the harm is apportionable. Such an inference is incorrect as it is the defendant(s) (who seek to limit their liability on the ground that the harm is capable of apportionment among them) who bear the burden of showing the divisibility of the harm.

Further, in paragraph five of the syllabus, and in Part IV of the majority opinion, certain references are made concerning the plaintiff's burden of proving that the conduct of each defendant was a substantial factor in producing the harm.

What the majority means by "substantial factor" is that the act of each defendant "proximately caused" the injury. This is so because, by virtue of paragraph six of the syllabus, the defendants are burdened with showing that the plaintiff's harm is capable of apportionment and the extent to which his or her conduct contributed to the harm. Plaintiff, who may not know whether a defendant's acts substantially contributed to his harm, need only prove that each defendant's acts contributed to the harm in any degree.

The majority finds the phrase "substantial factor" in 2 Restatement of the Law 2d, Torts (1965) 440, Section 433A, Comment i, and Section 433B(1), Comment a. Section 433B(1) merely sets forth the traditional notion that the plaintiff must prove that a defendant proximately caused his/her harm.

Accordingly, the plaintiff in a case such as the case at bar must prove only that the act of each defendant proximately caused an injury. This proposition is embodied in paragraph five of the syllabus. Thereafter, it is incumbent upon the defendants to show that the harm is capable of apportionment and the extent to which each defendant's conduct contributed to the harm. This proposition is contained in paragraph six of the syllabus.

For purposes of guidance in an area of law that is oftentimes confusing, I offer the following proposition in lieu of paragraphs five, six and seven of the syllabus:

Where a plaintiff shows that he has suffered an injury as the result of the tortious acts of two or more defendants, and one or more of the actors seeks to limit his or her liability on the ground that the harm is capable of apportionment among the other actors, the burden is upon such actor(s) to show that the harm is capable of appor-

tionment and the extent to which his or her conduct contributed to the harm.

HOLMES, J., concurring in judgment. Although I disagree with much of the syllabus law and the discussion within the opinion, I concur in the final judgment of the majority.