[Cite as *State v. Friend*, 2026-Ohio-2172.]

# IN THE FIFTH DISTRICT COURT OF APPEALS
## MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. CT2025-0095 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. CR2025-0168 |
| CODY A. FRIEND | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: June 9, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; Robert G. Montgomery, Judges

**APPEARANCES:** JOSEPH A. PALMER, for Plaintiff-Appellee; SCOTT P. WOOD, for Defendant-Appellant.


*King, P.J.*

{¶ 1}   Defendant-Appellant Cody Friend appeals the July 11, 2025 judgment of conviction and sentence of the Muskingum County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

### Facts and Procedural History

{¶ 2}   Appellant is the oldest child of L.T. Appellant has three younger siblings, T.T., M.F., and J.T. The charges in this matter arose when appellant's younger siblings disclosed that appellant had sexually assaulted them when they were all minors.

{¶ 3}   In October, 2024, T.T. told appellant's ex-wife and some friends that when she was a child, between 2001 and 2008, appellant had sexually assaulted her numerous times. T.T. was four to eleven years old when appellant assaulted her and appellant was eight to fifteen years old. T.T. went to the police department the next day and made a report.

{¶ 4} Following T.T.'s disclosure, M.F. and J.T also reported appellant had sexually assaulted them as children. M.F. stated he was assaulted between 2004 and 2008 when he was between nine and twelve years old and appellant was between eleven and fourteen years old. J.G.T. stated he was assaulted between 2005 and 2007 when he was six to eight years old and appellant was twelve to fourteen years old.

{¶ 5} As a result of these disclosures, the Muskingum County Grand Jury returned a thirteen-count indictment charging appellant with eight counts of rape involving T.T., two counts of rape and one count of gross sexual imposition pertaining to M.F., and two counts of rape involving J.G.T.

{¶ 6} Appellant entered pleas of not guilty and elected to proceed to a jury trial. Before trial, appellant filed a motion to sever the charges and asked the court to hold three separate trials. On February 7, 2025, the trial court held a hearing on the matter. On February 11, 2025, the trial court denied the motion.

{¶ 7} The matter proceeded to a three-day jury trial on July 8, 2025. The State presented evidence from each victim, L.T. and her sister, appellant's ex-wife, the sibling's oldest step sister, and the detective who investigated the matter. Appellant rested without presenting evidence. After hearing the evidence and deliberating, the jury convicted appellant of 12 counts of the indictment, but acquitted him of one count of rape against T.T. Appellant was subsequently sentenced to an aggregate prison term of 44 years.

{¶ 8} Appellant filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows:

I

{¶ 9} "THE TRIAL COURT ERRED IN FAILING TO SEVER SEX OFFENSES RELATING TO THREE SEPARATE ALLEGED VICTIMS."

{¶ 10} In his first assignment of error, appellant argues the trial court committed error when it denied his motion to sever his trial into three separate trials. We disagree.

Applicable Law

{¶ 11} We review a trial court's denial of a motion to sever for abuse of discretion. *State v. Ford*, 2019-Ohio-4539, ¶ 40. "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 12} Crim.R. 8(A) governs joinder of offenses and states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. See, *State v. Torres*, 66 Ohio St.2d 340, 343 (1981), *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992). Joinder is appropriate where the evidence is interlocking and the jury can easily segregate the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577-578 (8th Dist. 1995).

{¶ 13} A defendant may, however, move to sever charges pursuant to Crim.R. 14. In such a motion, the defendant bears the burden to show his rights would be prejudiced

by joinder. *State v. Strobel*, 51 Ohio App.3d 31, 33 (3d Dist., 1988). Severance is not required if the State can demonstrate: (1) evidence of the joined offenses would be admissible under Evid.R. 404(B), or (2) the evidence of each offense is simple and direct. *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). Evidence is "simple and direct" if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would "improperly consider testimony on one offense as corroborative of the other." *State v. Valentine*, 2019-Ohio-2243, ¶ 48 (5th Dist.) (Citations omitted).

{¶ 14} "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 2020-Ohio-4441, ¶ 36. Other acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22.

{¶ 15} In this mater, the trial court found in part that even if the counts were severed, the victim in each matter would be able to testify in the other victim's cases as to bullying by appellant, the access appellant had to the victims, and the force used by appellant because "[f]orce is a specific material issue between the parties." Decision Entry, February 11, 2025, page 3.

{¶ 16} The trial court further found that even if the other acts evidence were not admissible, the evidence was simple and direct. Decision Entry, February 11, 2025 (case number CR2024-0752) pages 3-4.

{¶ 17} Appellant does not challenge the trial court's finding that the evidence was simple and direct. Instead, he faults the trial court for failing to specifically identify which non-propensity exception was being utilized and failing to set forth the rationale for the admission. But if trial court found the evidence was simple and direct, then it was not necessary for the court to also justify its admission under 404(B). See *Lott* supra ("when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as "other acts" under Evid. R. 404(B).").

{¶ 18} Appellant likens his case to *State v. Reed*, 2024-Ohio-43 (5th Dist) (Delaney dissenting), wherein this court reversed the trial court's denial of Reed's motion to sever. In that matter we recognized "[a]s the number of alleged victims increases, the potential for a jury to improperly consider a Defendant's other acts as propensity evidence, despite the court giving an instruction to the contrary, also increases." *Id*. ¶ 23.

{¶ 19} We first note that *Reed* is distinguishable factually as the child victims were unrelated and each assault occurred years apart. *Id*. ¶ 26. Here, appellant abused his siblings as a continuing course of conduct while they all lived in the same household. Moreover, the record demonstrates the jury was able to segregate the evidence presented and follow the instruction of the trial court to treat each charged offense separately as it did not convict appellant as charged, but rather acquitted him of one count of rape.

{¶ 20} Appellant's first assignment of error is overruled.

II

{¶ 21} "THE TRIAL COURT ERRED IN LIMITING APPELLANT'S CLOSING ARGUMENT RELATING TO AN ALLEGED "ADMISSION" MADE BY APPELLANT."

{¶ 22} In his final assignment of error, appellant argues the trial court erred when it limited his closing argument. Because we find the trial court did not limit appellant's closing argument but rather made a ruling on the permissible bounds of closing argument, we disagree.

**Applicable Law**

{¶ 23} A defendant's Sixth Amendment right to counsel in a criminal prosecution has been interpreted so as to guarantee that the defendant has an "opportunity to participate fully and fairly in the adversary factfinding process." *Herring v. New York*, 422 U.S. 853, 858 (1975). Closing argument provides defense counsel with an opportunity to summarize the evidence and serves as a "basic element of the adversary factfinding process." *Id*.

{¶ 24} "Great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate." *Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraph one of the syllabus.

{¶ 25} Appellant suggests that our standard of review for this assignment of error is de novo. We disagree. "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Id*., paragraph three of the syllabus. See also *State v. Munion*, 2013-Ohio-3776 ¶ 24 (4th Dist.); *State v. Watson*, 2009-Ohio-6713 ¶26 (3d Dist.). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are

unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process that would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

Appellant's Argument

{¶ 26} Appellant's argument begins with a statement made by the State during its closing argument regarding a discussion appellant had with his mother, L.T.:

[The State]: She told you about the defendant apologizing if he ever hurt anyone. She told you that [appellant] wanted to contact—wanted her to contact the others and see if they would drop the charges so that they could sit down and talk this out.

So there are things that are called admissions and that's when somebody says I did it. And then legally, there's a term called statements against interest. And those statements are statements that when you look at them in all the surrounding information that you have, when you look at the circumstantial evidence, it becomes clear what it means. If you didn't do it, what would you need to sit and talk about?

{¶ 27} Transcript of trial (T.) 560-561.

{¶ 28} In response, counsel for appellant argued:

[Counsel for Appellant]: Now, there are no admissions by [appellant]. The prosecutor said, well, wait a minute. We have this statement that he said—he told his mom, you know, tell them—my siblings that if I hurt them, I'm sorry. Can we just sit down and talk about this? That's not an admission of sexual abuse. That's an admission that you have siblings who are making allegations against you that aren't true.

Obviously they are hurting. Obviously it's coming from somewhere. So if I—if I hurt you, I'm sorry, but let's sit down and talk about it because it never happened. That's not an admission. That's family members trying to figure out where other family members are coming from.

[The State]: Objection, Your Honor. There's no evidence to that.

The Court: Sustained

[Counsel for appellant]: Can we approach, Your Honor? I'm not sure of that objection.

{¶ 29} T. 585.

{¶ 30} A lengthy discussion took place outside the presence of the jury. The trial court found:

[The Court]: You can argue that it's not an admission as you have argued, and you can argue that there could be other reasons for

why he did it and they can use their reason and common sense, but you can't then provide them with some explanation as if that's what the defendant was doing because you didn't have anyone testify to that. You didn't have any evidence that was provided in front of the jurors.

. . .

[Counsel for appellant]: In the—in the State's closing, they said those statements, the evidence, he argued those statements are an admission of a sexual offense.

[The State]: I didn't.

[Counsel for appellant]: That's what he said.

[The State]: I did not argue it.

[Counsel for appellant]: I'm not saying you have those statements but those are statements of this. We did exactly the same thing, but we're pointing to two separate possible interpretations.

[The Court]: That's not what happened actually, [counsel for appellant]. What happened is [the State] talked about statements against interest, and then he said from all the circumstances you can draw the conclusion that it's an admission. That's different than saying it's an admission. You can certainly get up and say this is a statement that was made, there are other reasonable explanations you can draw from that. You don't have to draw a conclusion of sexual assault.

What you cannot do is then provide the jurors with essentially what is a statement of what you in the mind of the juror (sic). They're going to think that's what the defendant meant. It's—there was no evidence of that so you can't make that argument to the jury. That specifically.

{¶ 31} T. 589, 592-893.

{¶ 32} Appellant argues the State was permitted to argue that his apology was both an admission and a statement against interest. But that claim is simply not supported by the record quoted above. The State argued that an inference could be made from the statement, not that the statement was an admission. Further, the trial court in no way limited counsel for appellant from doing the same. Rather, it limited counsel from providing a specific explanation, i.e. "[t]hat's family members trying to figure out where other family members are coming from" when the defense had produced no evidence of a specific explanation.

{¶ 33} Because the trial court in no way limited appellant's closing argument, but rather made an appropriate ruling on bounds of closing argument based on the evidence produced at trial, we find no abuse of discretion. Accordingly, the final assignment of error is overruled.

{¶ 34} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.

{¶ 35} Costs to Appellant.

By: King, P. J.

Baldwin, J. and

Montgomery, J. concur.